## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| KENDRICK BUTLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  15-cv-1102 |
| | ) | |
| ADAM DEAL | ) | Honorable Joe B. McDade |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Adam Deal. (Doc. 74). The motion has been fully briefed. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff Kendrick Butler is an inmate currently incarcerated at Pontiac Correctional Center ("Pontiac"). On March 12, 2015, Butler filed a Complaint pursuant to 42 U.S.C. § 1983 against Pontiac Correctional Officer Adam Deal and Pontiac Medical Technician Jaculynn Lane. (Doc. 4). The Complaint stated that, prior to Plaintiff's transfer on November 29, 2013, to Pontiac, Plaintiff suffered wrist injuries from excessive force inflicted by officers at his prior institution, Menard Correctional Center ("Menard"). *Id.* at 8. Plaintiff also stated that he had high blood pressure, asthma and back injuries unrelated to the excessive force that were well-documented at Menard. *Id.*

1

Plaintiff alleged that when he arrived at Pontiac, Lane neglected to treat him for his medical conditions; specifically, he did not receive an inhaler for his asthma until January 2014. *Id.* Plaintiff also alleged that he complained to Officer Deal throughout December 2013 about his medical conditions, but was not treated. *Id.* Butler further stated that he was scheduled for sick call and a cell-house change on December 15, 2013. *Id.* When Officer Deal arrived to transfer Plaintiff to a new cell house, Plaintiff alleged that he told Deal he was in pain and suffering from asthma problems, and that he wanted to make his medical appointment. *Id.* at 8-9. Butler claimed that Deal became angry, refused to let him attend his medical appointment, and instead cuffed Plaintiff excessively hard. *Id.* at 9. He claimed Deal ignored Plaintiff's wrist injuries and intentionally cuffed him so tight that the circulation was cut off. *Id.* Plaintiff stated that Lane subsequently saw Plaintiff's wrist injuries from his interaction with Deal, but refused to treat him. *Id.* at 10.

On May 12, 2015, the Court issued a Merit Review Order concluding that Butler stated claims for excessive force and deliberate indifference to serious medical needs against Officer Deal and a claim for deliberate indifference to serious medical needs against Lane. (Doc. 7).

On August 21, 2015, Defendant Lane filed a motion for summary judgment arguing that Butler failed to exhaust his administrative remedies as to his claim against her. (Doc. 15). The Court agreed, and granted judgment as a matter of law in Lane's favor on January 12, 2016. (Doc. 22).

On June 15, 2017, the Court granted Plaintiff's Motion to Request Counsel as to his remaining claims against Officer Deal. (Doc. 38). On September 14, 2017, the Court entered a Text Order notifying Plaintiff that his case was selected for appointment of the University of Illinois Law School Federal Civil Rights Clinic ("UI") to represent him. *See* 9/14/2017 Text Order. On September 25, 2017, Butler filed a response to the Court's Text Order, in which he accepted UI's appointment. (Doc. 44). Law students Arthur Haynes and Loren Jones were appointed to represent Butler. *See* 9/29/2017 Text Order.

Unfortunately, on March 2, 2018, Plaintiff's counsel filed a motion to withdraw, citing an irretrievable breakdown in the attorney-client relationship and stating that Ms. Jones was no longer comfortable or capable of continuing representation. (Doc. 59 at 1). The motion further explained that UI was unwilling to have other students from its clinic represent Plaintiff. *Id.* On March 6, 2018, the Court granted counsel's motion to withdraw, *see* 3/6/2018 Text Order, and Plaintiff has since proceeded *pro se* in this matter.

On June 27, 2018, the Court entered a Text Order stating that there was reason to suggest that the claims against Officer Deal were amenable to disposition by summary judgment, and therefore ordered Defendant to file a motion for summary judgment on or before July 6, 2018. *See* 6/27/2018 Text Order.

On July 6, 2018, Officer Deal filed a motion for summary judgment arguing that Plaintiff has failed to demonstrate a genuine issue of material fact on either of his claims. (Doc. 74). Officer Deal further argues that he is entitled to qualified

immunity. *Id.* Plaintiff's response was due on July 27, 2018, and he did not file his response until July 30, 2018. (Doc. 76). While Butler's response was untimely, the Court still considered it. This matter is now ripe for decision.

## MATERIAL FACTS

Butler was transferred from Menard to Pontiac on November 29, 2013. Deposition Kendrick Butler, 9:8-12 (Doc. 74-2). Butler had a history of hypertension and asthma. Prior to being transferred, Plaintiff had a ganglion cyst on his right wrist and he suffered a left wrist fracture in August 2012. *Id.* 11:17-19; 51:10-12. Plaintiff claims that he had recent wrist injuries from excessive force inflicted on him by Menard correctional officers just before his transfer. *Id.* 11:7-15. He claims that Menard officers left handcuffs on him for more than three days at a time, which caused pain. *Id.* He claims he was prescribed Ibuprofen at Menard for swelling in his wrists and ankles. *Id.* 15:18-22-16:2-17.

Butler testified that when he arrived at Pontiac he was not seen by medical staff, although Butler's medical records indicate that he was seen by a Nurse Brown on November 29, 2013, when he arrived. *Id.* 12:17-14-13:1-16. Medical records indicate that Nurse Brown noted asthma, hypertension, a ganglion cyst in Butler's right wrist, and a former fracture in Butler's left wrist and jawbone. (Doc. 74-5). The record indicates no physicals disabilities or limitations. *Id.*

Butler does not recall exactly when he had made sick calls between November 29, 2013, and December 12, 2013, though Butler claims he made multiple requests to be seen for his high blood pressure and asthma, but he was not provided medical

4

assistance. Butler Dep., 13:21-24-14:10-16. Butler claims that he gave "messages" to Officer Deal about needing medical assistance, but Plaintiff still received no medical assistance until he was seen by Medical Technician, Jaculynn Lane, on December 12, 2013, for his asthma, high blood pressure, and wrist injuries. *Id.* 10:1-12; Doc. 74-5 at 3. Lane recorded that Butler complained of swelling, pain and limited range of motion in his right wrist from recent injuries. *Id.* Lane then put Plaintiff in for sick call. Butler Dep., 10:13-18.

For some unknown reason, Butler's sick call was rescheduled for December 15, 2013, the same day he was also scheduled for a cell-house transfer. *Id.* 10:19-24. Butler claims that when Officer Deal arrived for the cell-house transfer, Officer Deal said "cuff up." *Id.* 34:16-24. Butler testified that he told Officer Deal about his sick call, his prior and current wrist injuries, that he had swelling and pain in his wrists, and that twisting his wrists caused pain, and he asked Officer Deal not to put the handcuffs on tight. *Id.* 10:19-24-11:1; 35:10-122; 39:13-18. Butler also asked Officer Deal if he could go to medical and then come back for the cell transfer, but Officer Deal said no and asked Butler to put his arms out and put his wrists through the cuff port. *Id.* 35:1-19. Butler claims he again expressed to Officer Deal that when he bends and twists his wrists and shoves them through the cuff port, it causes pain. *Id.* 35:17-22. Officer Deal then asked Butler if he was refusing transfer, and Butler responded that he was not refusing housing, that he was just trying to explain his wrist problems and ask for an adjustment that involved no twisting of his wrists. *Id.* 35:22-24-36:1-19.

5

According to Butler, Officer Deal told him that prison protocol requires wrists to be "twisted" and "flicked" behind the inmate's back during handcuffing. *Id.* 23:1-17; 28:11-17; 30:6-8. Butler contends that other correctional officers knew of his wrist pain and would let him keep his wrists straight and facing each other behind his back when he was handcuffed, which did not cause pain. *Id.*; 26:5-13. Butler claims that Officer Deal refused to adjust his handcuffing procedure. *Id*

Butler testified that Officer Deal then left to call Lieutenant Eutsey. *Id.* 36:3-20. Lieutenant Eutsey allegedly told Officer Deal "look, anything that causes pain for [Butler][], try not to do it because we not trying to intentionally inflict pain on him." *Id.* 30:20-23. Butler claims Officer Deal did not listen, but instead twisted Butler's wrists and put the handcuffs on so tight, "like he was trying to cause intentional pain," that it was cutting off Butler's blood circulation. *Id.* 31:1-11; 35:17-24; 37:8-16. Lieutenant Eutsey walked with Butler and Officer Deal to processing, and Butler told Lieutenant Eutsey that his wrists were hurting because Officer Deal put the handcuffs on too tight. *Id.* 37:17-20. His handcuffs were not adjusted. Butler testified that once he arrived at his new cell house, another officer changed out his cuffs and noticed how swollen Butler's wrists were. *Id.* 42:7-20; 44:9-12.

Butler testified that he felt pain for approximately 30 to 45 minutes while he waited, handcuffed, to be processed out of his old cell house, and that his wrists went numb for the following 48 hours. *Id.* 40:23-24-41:1-24; 45:1-3. Butler further testified that when he had pressure on his wrists, his pain was a "10" on a scale of 1 to 10 ("10

being the most pain you can possibly imagine") and when his wrists were twisted, his pain was "probably 7 or 8." *Id.* 30:1-8.

Butler received a disciplinary report from Officer Deal on December 15, 2013, for disobeying a direct order and insolence. *Id.* 33:21-24.

Butler has never had a special wrist permit, and he never requested one at Menard. *Id.* 18:19-23. Butler claims that he did not need a wrist permit when he was at Menard because he was in general population, and inmates in general population never have to wear handcuffs unless the prison is on lockdown. *Id.* 19:3-14. However, when Butler was transferred to Pontiac for a term of segregation, he was required to wear handcuffs behind his back when he moved outside of his cell. *Id.* 20:3-24, 22:17-21.

After his interaction with Officer Deal, Butler presented himself to medical at least seven times between December 2013 and June 2014 with complaints of wrist pain. (Doc. 74-5). Butler's medical records indicate that his wrists were mostly normal and presented no redness, swelling, edema, or deformities. (Doc. 74-5 at 14-19). He was prescribed Motrin or Ibuprofen for pain. *Id.* X-rays of his wrists were conducted on April 15, 2014. *Id.* at 19. Notes from the x-ray follow-up on May 8, 2014, state "x-ray review, unremarkable past injury noted." *Id.* at 20. It was recommended that Butler continue with his prescribed pain medication. *Id.* On June 2, 2014, Butler reported with bilateral wrist pain and said Motrin was not helping, so he was referred to sick call. *Id.* at 21. Butler was again prescribed Motrin for pain. *Id.* at 21. Butler

testified that he does not have any permanent injuries from his interaction with Officer Deal. Butler Dep., 50:12-24.

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [it] bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Merely stating that a fact is disputed is not enough to establish that such a fact is genuinely disputed. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). Moreover, Central District of Illinois Local Rule 7.1(D)(1)(b) and (2)(b)(2) require citations to relevant documentary evidence. Courts are well within their discretion to treat unsupported facts as undisputed for purposes of deciding the summary judgment motion. FED. R. CIV. P. 56(e).

DISCUSSION

## I.    Deliberate Indifference Claim

Officer Deal argues that Plaintiff has not shown a genuine issue of material fact regarding whether Officer Deal was indifferent to Butler's serious medical needs. Officer Deal contends that Butler cannot show he suffered from an objectively serious risk of harm or that Officer Deal was deliberately indifferent to Plaintiff's medical needs. The Court agrees with the latter argument. Butler has not presented any evidence that Officer Deal was deliberately indifferent to his serious medical needs.

"[T]he Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any

9

penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016), *as amended* (Aug. 25, 2016), *cert. denied*, 137 S. Ct. 1578 (2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care.'" *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle*, 429 U.S. at 104)).

"A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component." *Id.*

> Thus, a prisoner must first establish that his medical condition is "objectively, 'sufficiently serious,' " *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and second, that prison officials acted with a "sufficiently culpable state of mind," *id.*, at 834, 114 S.Ct. 1970 (citations omitted)—i.e., that they both knew of and disregarded an excessive risk to inmate health. *see id.* at 837, 114 S.Ct. 1970; *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

*Id.* at 562-63. "Deliberate indifference is more than negligence and approaches intentional wrongdoing.*" Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal citation omitted).

The Court need not address whether Butler suffered from an objectively serious medical condition because Plaintiff has not provided evidence sufficient to create a genuine issue of material fact regarding whether Officer Deal acted with a sufficiently culpable state of mind. Butler's testimony does not shed light on Officer Deal's state of mind at all. Butler merely testified that he sent "messages" to Officer

Deal between November 29, 2013, and December 12, 2013, about needing medical assistance but that he "never received no medical assistance through him." Butler could not recall exactly when he sent such messages, and he did not testify as to the content of those messages. *Cf. Collins v. Seeman*, 462 F.3d 757, 759-60 (7th Cir. 2006) (defendants were aware that plaintiff had requested to see the crisis counselor, but they were not informed of the *reason* for the request; a request to see a counselor alone is not sufficient to put a defendant on notice that an inmate poses a substantial risk of harm). Butler also does not allege that Officer Deal ignored him or refused to pass on the messages. As such, Butler's testimony lacks adequate detail to create a genuine issue of material fact regarding whether Officer Deal was aware of Plaintiff's potentially serious medical condition, let alone that he disregarded an excessive risk to Butler's health. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) ("To demonstrate that a defendant acted with a 'sufficiently culpable state of mind,' a plaintiff must put forth evidence [at the summary judgment stage] to establish that the defendant knew of a serious risk to the prisoner's health and consciously disregarded that risk."); *see also Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006) (assistant warden's failure to get back to the plaintiff about his informal complaint of pain and bowel complications evinced a negligent handling of the complaint at most, not deliberate indifference).

Additionally, Butler was seen by medical on December 12, 2013, and he does not allege that he was harmed as a result of the delay in treatment between November 29, 2013 and December 12, 2013. *See Petties*, 836 F.3d at 730-31 ("To show

11

that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain."); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (based on the evidence provided by the plaintiff, a jury could further infer that the officers' delay in arranging medical treatment caused Grieveson "that many more hours of needless suffering for no reason."). Officer Deal is therefore entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim.

## II.  Excessive Force Claim

Officer Deal argues that Plaintiff cannot demonstrate a genuine issue of material fact regarding whether Deal used excessive force when he handcuffed Butler to escort him to a new cell. Specifically, Defendant claims that he used the appropriate force in cuffing Butler because Butler refused to comply with Officer Deal's orders and Butler did not have a special cuffing permit. Furthermore, Defendant contends that Butler suffered no injuries as a result of Officer Deal's cuffing. For reasons that follow, summary judgment on this claim is denied.

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (internal quotations omitted). The Seventh Circuit recognizes excessive force claims based on overly tight handcuffs, *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006), though such a claim cannot be predicated on a *de minimis* use of force, *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999). Rather, the

quantum of force required for a constitutional violation is that which is "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). In determining whether an injury is more than *de minimis*, "several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Case law makes clear that the relevant inquiry is the amount of force used, not the nature of the plaintiff's injuries. *Hudson*, 503 U.S. at 9; *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (vacating dismissal of excessive-force claim because district court erroneously focused on extent of injury rather than nature of force applied); *see Reid v. Melvin*, 695 F. App'x 982, 983 (7th Cir. 2017) ("The extent of the plaintiff's injury is relevant only insofar as it sheds light on the level of force used.").[1]

---

[1] In *Hudson*, the Supreme Court reiterated that the application of the deliberate indifference standard is inappropriate in excessive force claims because the implications involved in a deliberate indifference to medical needs claim are different from those in an excessive force claim. 503 U.S. at 6.

> For example, the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited "deliberate indifference." See *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). This standard is appropriate because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns. . . .

> By contrast, officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prisonworkers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." 475 U.S., at 320, 106 S.Ct., at 1084. We accordingly concluded in *Whitley* that application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Id.,* at 320–321, 106 S.Ct., at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (CA2),cert. denied *sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). . . .

The Court finds that Butler has adduced enough evidence to create a genuine issue of material fact regarding whether Officer Deal used excessive force when he handcuffed Butler exceedingly tight and refused to loosen the cuffs despite Butler's pleas of pain.

While the absence of serious injury is not dispositive, it is one factor that provides some indication of the amount of force applied. Here, Butler admittedly did not suffer any permanent injury as a result of this handcuffing incident. Although, he experienced pain for 45 minutes, and his wrists were numb for 48 hours. Furthermore, Butler sought medical attention for wrist pain several times during the months following the incident. *See Cooper v. Meyer*, No. 16-526, 2017 WL 6001870, at *5 (W.D. Wis. Dec. 4, 2017) (denying summary judgment where plaintiff adduced evidence in the form of testimony and medical records "showing at least some injury" that the officer "twisted his wrist, slammed his hands against the trap door,[] applied the handcuffs very tightly," and that "this extreme force caused him great pain").

Butler's testimony suggests that Officer Deal may have applied more than *de minimis* force and force beyond what was needed to maintain or restore discipline. Butler testified that despite telling Officer Deal multiple times that he had wrist pain from former injuries and that it hurt when his wrists were twisted, Officer Deal twisted Butler's wrists and cuffed them so tight that it cut off his circulation. The

---

[W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Id.*

Court seriously questions whether Officer Deal was required to take Butler's pre-cuffing complaints at face value, especially considering there is no evidence of objective or apparent injuries to Butler's wrists. Furthermore, Butler was at Pontiac to serve a term of segregation and as he admits, inmates who are in segregated population must be handcuffed when they move about the prison for security reasons. *See Thomas v. Walton*, 461 F. Supp. 2d 786, 792 (S.D. Ill. 2006) ("In an excessive force case, an inmate's disciplinary history, as well as the fact that an incident involving alleged excessive force concerned an inmate in segregation at a maximum security institution, are relevant to the issue of the appropriateness of the force used."). In fact, Butler testified that he believed Pontiac policy required inmates' wrists to be "twisted" and "flicked" through the cuff-hole, possibly suggesting that Officer Deal was reasonably following prison policy at the time.

However, Butler testified that Officer Deal went beyond prison policy and placed the handcuffs on so tight with the intent to cause pain; so hard as to cut off Butler's blood circulation. Furthermore, once the handcuffs were on, Butler complained to Officer Deal and Lieutenant Eutsey that his wrists were in pain, but neither officer loosened the cuffs. Once the handcuffs were on and Butler expressed he was in pain, Officer Deal reasonably should have checked the tightness of the cuffs. *See Howard v. Ealing*, 876 F. Supp. 2d 1056, 1068 (N.D. Ind. 2012) (denying summary judgment on excessive force claim where plaintiff complained to officer three or four times about the cuffs, asking him to loosen them, and elaborated on his pain, but officer refused to loosen the cuffs).

Officer Deal argues that some level of force was necessary because Butler was refusing to comply with his orders, as evidenced by the disciplinary report Officer Deal issued for insolence following the incident. But Butler's testimony paints a different picture. Butler testified that he was not disobeying Officer Deal, but that he was just asking to be handcuffed in a way so as to not inflict unnecessary pain. He testified that he was not refusing to be transferred. Indeed, Butler was ultimately handcuffed and transferred to his new cell-house. Perhaps the Court's analysis on this point would be different if it had the benefit of Officer Deal's testimony, but Officer Deal was never deposed in this case. The Court must interpret the facts in a light most favorable to Butler. *See Payne v. Pauley*, 337 F.3d 767, 788 (7th Cir. 2003) (when considering excessive force claim, district court erred in crediting Officer's version of events that plaintiff refused to obey his orders where plaintiff denied those allegations).

Additionally, Defendant has not provided any evidence of what Pontiac protocol is concerning handcuffing inmates in segregation. The Court doubts that protocol requires handcuffing so tight as to cut off circulation and cause numbness for two days, especially when the inmate complained to the officer of wrist injuries and pain before and after cuffing. *See, e.g., Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (noting that "an officer's otherwise reasonable conduct may be objectively unreasonable when the officer knows of an arrestee's medical problems."); *Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013) (denying summary judgment where officers

knew of plaintiff's preexisting medical conditions but placed handcuffs on overly tight).

Thus, Butler has adduced evidence sufficient to create a genuine issue of material fact regarding whether Officer Deal used excessive force when he handcuffed Butler for his cell-house transfer and subsequently refused to loosen those cuffs despite Butler's complaints. Because it was clearly established in 2013 that using handcuffs to inflict prolonged or unnecessary pain on a prisoner violated the Eighth Amendment, Officer Deal is not entitled to qualified immunity on the excessive force claim. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Ajala v. Tom*, 658 F. App'x 805, 806 (7th Cir. 2016); *Rabin*, 725 F.3d at 636 (officer who knew tight handcuffs would cause arrestee unnecessary pain not entitled to qualified immunity).

## CONCLUSION

For the reasons stated above, Officer Deal's Motion for Summary Judgment (Doc. 74) is GRANTED in part and DENIED in part.

Entered this 30th day of July, 2018.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
